IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

       Plaintiff,

v.

$99,560.00 IN UNITED STATES CURRENCY,

       Defendant.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by and through United States Attorney John F. Walsh and Assistant United States Attorney Martha A. Paluch, pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions G(2), states:

JURISDICTION AND VENUE

1. The United States of America (the United States) has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881, seeking forfeiture of defendant property involved in the narcotics provisions of 21 U.S.C. §§ 801 et seq. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2. Venue is proper under 21 U.S.C. § 881(j), 19 U.S.C. § 1605 and 28 U.S.C. § 1395, as defendant property is located, and all of the acts described herein occurred, in the District of Colorado.

## DEFENDANT PROPERTY

3. Defendant property is described as $99,560.00 in United States Currency seized on September 3, 2010, from 4922 Barnstormers Drive in Colorado Springs, Colorado ("Defendant Currency"). Defendant Currency is currently being held by the United States Marshals Service in Denver, Colorado.

## FACTUAL BASIS FOR FORFEITURE

4. Except as otherwise noted, all of the following facts and information have been discovered through my own investigation, and the observations and investigations of fellow law enforcement officers as reported to me.

5. Beginning in March of 2009, agents of the Colorado Springs, Colorado Drug Enforcement Administration (DEA) office initiated an investigation into a large scale cocaine and methamphetamine trafficking organization (DTO) operating in Colorado Springs headed by Alfonso Roacho. The investigation revealed that narcotics were being transported directly from Mexico to Colorado Springs, which would then be distributed within Colorado Springs and other states, including Kansas and Illinois. The investigation utilized multiple court ordered wiretaps of telephones being utilized by the Roacho DTO, in addition to surveillance, confidential sources, and confidential informants.

6. As part of the investigation, agents reviewed a report regarding the traffic stop and arrest of Roberto Ortiz on February 3, 2008, in Rock Island, Illinois. At the time of the arrest, Ortiz was transporting two kilograms of cocaine in his vehicle. The report indicated that during a post-arrest interview, Ortiz stated that his source of supply was Alfonso Roacho of Colorado Springs, Colorado, and that he had been purchasing two kilograms of cocaine from Roacho every two weeks

for approximately the last three years, or since 2005.

7. In approximately 2009, a confidential Source of Information (SOI) was interviewed by DEA agents regarding the SOI's knowledge of the Roacho DTO. The SOI stated that Alfonso Roacho had been distributing cocaine in Colorado Springs since approximately 1999, and that in recent years, Roacho had been distributing eight to ten kilograms per week. According to the SOI, Roacho's brother, Cervando Roacho, lived in Mexico and coordinated the shipments of cocaine from Mexico to Alfonso in Colorado Springs. The SOI told agents that Roacho was business partners with Arnaldo Parra in a local company called A&A Stucco, but that Parra also distributed cocaine for Roacho. The SOI did not believe A&A Stucco was an entirely legitimate business. The SOI also told the agents that as of two years ago, Gabriel Holguin had been purchasing approximately five kilograms of cocaine per week from Alfonso Roacho. Holguin is Roacho's brother-in-law. The SOI further stated that when Holguin was arrested in August 2009 and later convicted of drug distribution, Omar Cera was promoted within the DTO and began distributing for Roacho. The SOI was given Omar Cera's phone number by Roacho, and told to call Cera when the SOI wanted to purchase cocaine.

8. Between August 14, 2010, and August 24, 2010, numerous monitored phone calls between Omar Cera and Jose Barraza took place, in which the two discussed possible illegal narcotics transactions. The calls indicated that Barraza was requesting to purchase one kilogram of cocaine from Cera, who in turn contacted Alfonso Roacho about supplying the cocaine. Cera also received a phone call from Oscar Paredes, inquiring if Alfonso Roacho had narcotics immediately available, indicating that he would need at least one ounce of cocaine.

9. Omar Cera successfully contacted Roacho on August 24, 2010, and told Roacho that he needed cocaine for both Barraza and Paredes, and said that he (Cera) already had the money in his possession. Roacho indicated that his source of supply was currently on the way to bring Roacho a load of cocaine.

10. On August 25, 2010, law enforcement observed Alfonso Roacho drive a blue Toyota pickup truck, registered in his name, to 5605 East Pikes Peak Avenue in Colorado Springs, Colorado; this location is the address for Roacho's business, A & A Stucco, and is referred to as "the Yard." Law enforcement had learned from a reliable confidential source, that the Yard was used by Roacho and others to store kilograms of cocaine. Shortly after Roacho arrived, officers observed Omar Cera's work truck parked behind Roacho's blue pickup truck. In a monitored telephone call, Cera then informed Jose Barraza that Roacho was there with the cocaine, and that the price for one kilogram was $27,000.00. Barraza asked Cera if the quality of the cocaine was good. Cera then asked Roacho if the quality was good, and Roacho was heard answering in the background that the cocaine was "sealed" (uncut). Barraza agreed to purchase the one kilogram from Roacho, after which Cera instructed Barraza to leave the money at Cera's residence (3280 South Academy Boulevard, #40), and said that Roacho would take the cocaine to Cera's house.

11. Approximately thirty minutes later, law enforcement observed Barraza arrive at Omar Cera's residence and go inside. When Barraza exited, law enforcement followed him back to his residence. Several monitored phone calls at this time indicated that Barraza had obtained the requested narcotics from Roacho, and that he was attempting to distribute them. Roacho was later observed leaving Cera's residence and returning to his own residence located on Barnstormer's Avenue in Colorado Springs.

12. Between August 26 and September 1, 2010, law enforcement monitored numerous phone calls between Omar Cera, Jose Barraza, and several confidential sources in which Cera brokered narcotics deals, and made arrangements for narcotics to be picked up at Cera's residence, 3280 South Academy Boulevard, #40.

13. On September 1, 2010, law enforcement intercepted several phone calls between Omar Cera and Alfonso Roacho which indicated that Roacho was expecting a load of illegal narcotics early on Friday, September 3, 2010. Law enforcement subsequently established surveillance on the residences of Omar Cera and Alfonso Roacho, as well as 5605 E. Pikes Peak Avenue, the known stash location.

14. Beginning at approximately 8:30 a.m. on September 3, 2010, law enforcement intercepted conversations between Alfonso Roacho and Omar Cera indicating that Roacho was going to get the cocaine for Cera and would then meet Cera at Cera's residence. Intercepted phone calls between Cera and Jose Barraza indicated that Barraza would be purchasing the cocaine from Cera once Cera received it from Roacho. Cera instructed Barraza to bring the money for the cocaine to Cera's residence.

15. Between approximately 8:41 a.m. and 9:24 a.m., surveillance officers at the stash location observed Alfonso Roacho, Omar Cera, and Arnaldo Parra meeting inside the business at that location. A short time later, each left the location, followed by surveillance officers. Cera and Roacho were followed to Cera's residence where they met with Jose Barraza and an individual later identified as Miguel Cota. Parra was followed for approximately one hour, after which officers conducted a traffic stop on his vehicle. Upon contact, Parra informed the officers that he had cocaine in the center console of the vehicle. Officers located and seized approximately 7.2 grams of cocaine

from the console, and $2,501.00 in United States Currency from his person.

16. Based in part on the facts contained herein, search warrants were obtained for several properties, including 3280 South Academy Boulevard, #40 (Omar Cera's residence), and 4922 Barnstormers Drive (Alfonso and Virginia Roacho's main residence).

17. On September 3, 2010, upon execution of the warrant for Omar Cera's residence, officers arrested Cera, Roacho, Barraza, and Miguel Cota. During the search, officers seized ½ brick of cocaine which was wrapped in plastic and located in a container near the kitchen sink; a white plastic bag from the kitchen table that contained a full brick of cocaine inside a brown paper bag; a pile of loose cocaine on the kitchen table next to an electronic scale and a Kenmore heat sealer; $15,020.00 in United States Currency from the kitchen table; $26,800.00 in United States Currency from inside the refrigerator crisper; and a handgun from one of the bedrooms. All of the monies seized from this location, in addition to a total of $3,823.00 seized from the persons of Roacho, Cera, and Barraza, totaled $45,643.00. After no claims were filed with DEA claiming ownership interest in these monies, a final Declaration of Administrative Forfeiture was issued on December 16, 2010.

18. Also on September 3, 2010, the search warrant for Roacho's Barnstormer's Drive residence was executed. During execution, officers seized $54,195.00 in United States Currency which was wrapped in tan packing tape and located inside a white safe in the basement furnace room (part of defendant Currency). In addition, officers seized $45,365.00 in United States Currency from a black safe inside an upstairs bedroom (the remainder of defendant Currency). While the search warrant was being executed, Alfonso Roacho's wife, Virginia Roacho, arrived at the residence and agreed to be interviewed. Virginia told officers that she was not aware of her husband being involved in any drug trafficking, but that he owned a stucco and concrete business and made between

$30,000 and $40,000 per year. When asked about the defendant Currency, Virginia stated that it was not her money and she had no knowledge of it.

19. During a post-arrest interview, Alfonso Roacho told officers that he did not know the other individuals arrested at Omar Cera's residence, and that he had just arrived at the residence when the search warrant was executed. When asked about his relationship with Cera, Roacho explained that Cera was a friend, that they got together two or three times a week at the Yard to drink beers, and that he had come to Cera's residence for the purpose of buying one ounce of cocaine from Cera for his own personal use.

20. During his post-arrest interview, Omar Cera explained that when he returned from the store, he found Jose Barraza and Alfonso Roacho inside his residence, that he did not know why they were there, but heard them negotiating for the purchase of cocaine, while Cera washed dishes in the kitchen. Cera stated that he knows Roacho, but that they only talk about roofing, that he knows nothing about illegal drugs and has no dealing with narcotics.

21. During a post-arrest interview, Arnaldo Parra told officers that he and Alfonso Roacho started the business A & A Stucco approximately three years ago, but that they had not yet seen much profit because they were spending as much money as they were taking in. Parra further stated that he uses cocaine every two weeks on average, but could not say from whom he purchased the cocaine. When asked about the $2,501.00 found on his person during his arrest, Parra stated that it was money he had received from two jobs.

22. During a post-arrest interview, Miguel Cota stated that the money found on the table at Cera's residence belonged to him. Cota further stated that after he and Jose Valenzuela (Barraza) arrived with the money, Alfonso Roacho arrived and placed a white bag with the cocaine on the

kitchen table.

23. Based in part on the facts contained herein, charges were filed in El Paso County District Court, 4th Judicial District against Alfonso Roacho (10-cr-3171), Omar Cera (10-cr-3199), Jose Barraza (10-cr-3192), and Arnaldo Parra (10-cr-3223) for controlled substance offenses. These cases are currently set for trial on April 5, 2011.

24. The facts set forth above are not all of the facts known to the investigation, but are sufficient to establish probable cause to believe the defendant Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

<u>VERIFICATION OF TASK FORCE OFFICER SARAH McCASLIN
DRUG ENFORCEMENT ADMINISTRATION</u>

I, DEA Task Force Officer Sarah McCaslin, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein is true.

                                        s/ *Sarah McCaslin*
                                        Sarah McCaslin, Task Force Officer
                                        Drug Enforcement Administration

STATE OF COLORADO          )
CITY AND                          )ss.
COUNTY OF DENVER          )

The foregoing VERIFIED COMPLAINT FOR FORFEITURE *IN REM* was subscribed before me this 26th day of January, 2011, by Sarah McCaslin, Drug Enforcement Administration Task Force Officer.

                                        s/ *Nicole C. Davidson*
My Commission Expires 6/15/2014        Notary Public, State of Colorado

## FIRST CLAIM FOR RELIEF

25. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

26. By the foregoing and other acts, defendant $99,560.00 in U.S. Currency constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

27. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

28. By the foregoing and other acts, defendant $99,560.00 in U.S. Currency constitutes proceeds traceable to an exchange for a controlled substance in violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

## THIRD CLAIM FOR RELIEF

29. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

30. By the foregoing and other acts, defendant $99,560.00 in U.S. Currency constitutes money used or intended to be used to facilitate a violation of 21 U.S.C. § 801 et seq., and therefore, is forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant property in favor of the United States, that the United States be authorized to dispose of the property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

Respectfully submitted this 26th day of January, 2011.

                                                JOHN F. WALSH
                                                United States Attorney

                                     By: s/ *Martha A. Paluch*
                                                MARTHA A. PALUCH
                                                Assistant United States Attorney
                                                1225 17th Street, Suite 700
                                                Denver, Colorado 80202
                                                Telephone: (303) 454-0100
                                                FAX: (303) 454-0402
                                                E-mail: Martha.Paluch@usdoj.gov
                                                Attorney for Plaintiff